UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID GAINER,   CASE NO.:  8:16-cv-03008-EAK-TBM

    Plaintiff,

v.

SPRINGLEAF FINANCIAL SERVICES, INC.

    Defendant.
_____/

### DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION, AND MEMORANDUM IN SUPPORT THEREOF

Defendant, OneMain Financial Services of America, Inc. f/k/a Springleaf Financial Services of America, Inc. ("OneMain Financial"),[1] by and through its attorneys, hereby moves (the "Motion") this Court for entry of an order compelling arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), and staying this litigation pending arbitration.  In support of this Motion, OneMain Financial states the following:

### I. INTRODUCTION

OneMain Financial is entitled to the relief it seeks because Plaintiff David Gainer ("Plaintiff") agreed to the terms of the Loan Agreement and Disclosure Statement ("Loan Agreement") containing an enforceable arbitration provision which covers the claims at issue. The subject arbitration agreement covers **any** claim arising from or relating to Plaintiff's Loan Agreement, or the relationships that result from the Loan Agreement. (*See* Declaration of Joseph M. Orlando (hereinafter, "Orlando Dec."), attached hereto as Exhibit "A," ¶¶ 3-5.)  Plaintiff's allegations in this lawsuit—that OneMain Financial allegedly violated the federal Telephone

---

[1] Plaintiff improperly named Springleaf Financial Services, Inc. as the Defendant in this action.

Consumer Protection Act ("TCPA") and the Florida Consumer Collection Practices Act ("FCCPA") for calls allegedly made by OneMain Financial to Plaintiff to recover a debt—are therefore expressly covered by the arbitration provision. Accordingly, this Court should compel Plaintiff to arbitrate his claims and stay this litigation pending arbitration.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Loan Agreement With OneMain Financial.

On or about May 14, 2015, Springleaf Financial Services of America, Inc. offered Plaintiff a loan in the amount of $3,025.00 (plus doc stamps in the amount of $10.85) (the "Loan"), conditioned upon Plaintiff's acceptance of the terms provided in the Loan Agreement attached to the offer. (*See* Orlando Dec., ¶¶ 3-5 and Ex. 1 thereto.) The Loan Agreement also contained "MANDATORY ARBITRATION PROVISIONS" (the "Arbitration Agreement"). (*Id.*). The Arbitration Agreement provides, in pertinent part:

> Either Lender or I may choose that any claim or dispute between the parties or any claim, dispute, or controversy involving me and any other party arising from or relating to this Agreement or the relationships which result from this agreement, including without limitation the arbitrability of any claim or dispute and the validity and enforceability of these Mandatory Arbitration Provisions or the entire Agreement, **shall be resolved by BINDING ARBITRATION**.

(*See id.*, Ex. 1 thereto (emphasis in the original).)

By negotiating the check provided with the Loan offer and Loan Agreement, as well as by accepting the proceeds of the Loan, Plaintiff agreed to the terms of the Arbitration Agreement. (*See id.*, ¶ 5 and Ex.t 1 thereto) Accordingly, the Arbitration Agreement expressly binds—in the broadest possible terms —Plaintiff to arbitrate any claim or dispute arising from or relating to the Loan Agreement and his relationship with OneMain Financial. (*See id.*, Ex. 1 thereto). The Arbitration Agreement uses broad language to encompass "any" claim "without limitation," including Plaintiff's claims that OneMain Financial allegedly violated the TCPA and

the FCCPA through the alleged act of calling the Plaintiff while trying to collect on the Loan Agreement. (*Id.*).

The Arbitration Agreement designates the American Arbitration Association ("AAA") as the arbitral forum providing that the arbitration shall be conducted in front of a single arbitrator, "under the Federal Rules of Evidence and the [AAA] Consumer Arbitration Rules in effect at the time the claims is filed." (*See id.*). The Arbitration Agreement further states that it shall be governed by the "Federal Arbitration Act." (*See id.*). Thus, the Arbitration Agreement expresses the parties' intent that the Federal Arbitration Act shall apply to and govern the Arbitration Agreement. (*See id.*) Per the Arbitration Agreement, the only type of claims excluded from arbitration are: "claims brought in a small claims court lawsuit strictly seeking a monetary recovery of no more than the court's jurisdictional limit (including attorney's fees and costs)." (*Id.*).

The significance and effect of the Arbitration Agreement is emphasized in the middle of the Loan Agreement where the following disclosure is printed in bold and upper-case type:

> **AS PROVIDED IN THE MANDATORY ARBITRATION PROVISIONS, LENDER AND I AGREE TO GIVE UP THE RIGHT TO GO TO COURT TO ASSERT CERTAIN CLAIMS. MY AND LENDER'S RIGHTS WILL INSTEAD BY DETERMINED BY AN ARBITRATOR, NOT A JUDGE OR JURY. I AM ENTITLED TO A HEARING BEFORE THE ARBITRATOR, BUT THE PROCEEDINGS (INCLUDING DISCOVERY) WILL BE MORE LIMITED THAN COURT PROCEEDINGS. THE ARBITRATOR'S DECISIONS WILL BE FINAL AND BINDING, SUBJECT TO LIMITED JUDICIAL REVIEW. IT IS IMPORTANT THAT I READ AND UNDERSTAND ALL THE ARBITRATION PROVISIONS BEFORE ACCEPTING THE LOAN.**

(*Id.*) The significance is further emphasized in the very last line of the Arbitration Agreement, which is printed in bold and upper-case type:

> **I UNDERSTAND THAT I AM VOLUNTARILY WAIVING MY RIGHT TO A JURY TRIAL OR A JUDGE TRIAL FOR SUCH**

DISPUTES.

(*Id.*).

On October 3, 2016, Springleaf Financial Services of America, Inc. changed its name to OneMain Financial Services of America, Inc. (*See id.*, ¶ 6).

### B.     Plaintiff's Allegations.

In his Complaint, Plaintiff alleges receiving calls to his cell phone around April of 2016 from OneMain Financial seeking to recover an alleged debt. (Compl., ¶ 26). According to the Complaint, Plaintiff demanded OneMain cease calls to his cell phone in April of 2016 (Compl., ¶ 27) and again in June of 2016 (Compl., ¶ 30). Furthermore, Plaintiff's Complaint asserts a count for alleged violations of the TCPA (Compl., Count I, ¶¶ 51-53) and a count for alleged violations of the FCCPA (Compl., Count II, ¶¶ 54-59) for alleged calls made in an attempt to collect payments owed under the Loan Agreement. Because Plaintiff's claims arise out of and relate to the Loan Agreement and Plaintiff's resulting relationship with OneMain Financial, there can be no dispute Plaintiff's claims fall squarely within the claims covered by the Arbitration Agreement.

Accordingly, OneMain Financial files this Motion to enforce the Arbitration Agreement and to have the Plaintiff's claims against OneMain Financial resolved in binding arbitration.

### III. LEGAL ARGUMENT

The Arbitration Agreement is governed by the FAA. Under federal law, this Court must compel Plaintiff to arbitrate his disputes with OneMain Financial and should stay this litigation.

### A.     The FAA Applies to and Governs the Arbitration Agreement.

It is the FAA that applies in this case. Through the FAA, Congress "mandated the enforcement of arbitration agreements." *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984). Section 2 of the FAA, the "primary substantive provision of the Act," *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), provides that binding arbitration provisions "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA applies in both federal and state courts. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23, 24 (2011) (per curiam) ("Agreements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts.").

The United States Supreme Court has described Section 2 of the FAA as reflecting the "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Thus, arbitration agreements, like other contracts, are enforceable in accordance with their terms. *Concepcion*, 131 S. Ct. at 1745-46. Section 2 of the FAA represents a congressional declaration of a "liberal federal policy favoring arbitration." *Id.* at 1745. Federal policy, therefore, requires courts to "construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007).

Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Accordingly, when an arbitration agreement explicitly designates the FAA as the applicable governing law, courts consistently uphold the intentions of the parties and enforce the provision. *See, e.g., Staples v Money Tree*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) ("[B]ecause [the parties] have stipulated that the contract between them involves interstate

commerce within the meaning of the FAA, the court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement[.]"); *Roberson v. Money Tree*, 954 F. Supp. 1519, 1523, n.4 (M.D. Ala. 1997) (same); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App. 2006) ("Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA."); *Langfitt v. Jackson*, 644 S.E. 2d 460, 465 (Ga. App. 2007) (same).

In the present case, the Arbitration Agreement expressly states that the Federal Arbitration Act governs its provisions. (*See* Orlando Dec., Ex. 1 thereto.) As a result, there can be no dispute that the FAA governs the Arbitration Agreement.[2]

### B. The Arbitration Agreement Must Be Enforced Under the FAA.

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *See Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (*citing Buckeye Check Cashing*, 546 U.S. at 443). Additionally, the FAA was passed "to reverse the longstanding judicial hostility to arbitration agreements . . . ." *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991)). Accordingly, under the FAA, written agreements to arbitrate controversies arising out of an existing contract are "valid, irrevocable and enforceable." 9 U.S.C. § 2.

---

[2] The FAA would still apply in this matter even absent a provision designating the FAA as the governing law. The FAA applies to an arbitration agreement arising out of a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Section 1 of the FAA expressly defines "commerce" as "commerce among the several States or with foreign nations." 9 U.S.C. § 1. The United States Supreme Court has held that the FAA reaches to the outer limits of Congress' power to regulate under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74 (1995). Simply put, the Credit Transaction at issue in this case involves interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Agreement."). Thus, even had the parties not expressly chosen that the FAA would apply to and govern their Arbitration Agreement, it is nevertheless independently governed by and enforceable under the FAA by virtue of the fact that it arises out of the Loan Agreement – a contract involving interstate commerce.

Arbitration is highly favored for its "simplicity, informality, and expedition." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results . . . .'" *Concepcion*, 131 S. Ct. at 1749 (citations omitted).[3] And, the United States Supreme Court has repeatedly confirmed that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *KPMG*, 132 S. Ct. at 25 (quoting *Mitsubishi Motors*, 473 U.S. at 631).

The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Accordingly, and in furtherance of the policy favoring arbitration, the FAA "***mandates*** that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 and 4) (emphasis added).

Given the strong federal policy favoring arbitration, it is "the party resisting arbitration [which] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph*, 531 U.S. at 91; *see also Gilmer,* 500 U.S. at 26 (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum"). The party opposed to arbitration cannot meet its burden by making "generalized attacks on arbitration that rest on 'suspicion of arbitration.'" *Randolph*, 531 U.S. at 89-90; *see also Mitsubishi Motors*, 473 U.S. at 626-27 (stating that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the

---

[3] The United States Supreme Court acknowledges "that Congress, when enacting [the FAA], had the needs of consumers, as well as others, in mind. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." *Dobson*, 513 U.S. at 280 (internal citations omitted).

development of arbitration as an alternative means of dispute resolution").

Under the FAA, accordingly, courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in consumer contracts like the one here. *See, e.g., CompuCredit Corp. v. Greenwood*, 563 U.S. ___, 132 S. Ct. 665 (2012) (credit card agreement); *Concepcion*, 131 S. Ct. 1740 (cell phone services contract); *Buckeye Check Cashing*, 546 U.S. 440 (consumer loan agreement); *Randolph*, 531 U.S. 79 (finance contract for purchase of mobile home); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan); *Dobson*, 513 U.S. 265 (termite protection contract); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011) (cell phone services contract); *Scott v. EFN Invs., LLC*, 312 F. App'x 254 (11th Cir. 2009) (consumer sales contract for the purchase of a vehicle); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553 (7th Cir. 2003) (home equity loan); *Beckwith v. Caliber Home Loans, Inc.*, No. 3:15-cv-00581-RDP, 2015 WL 3767187 (N.D. Ala. June 17, 2015) (Proctor, J.) (mortgage loan); *Leeman v. Cook's Pest Control, Inc.,* 902 So.2d 641 (Ala. 2004) (termite contract).

A trial court's role in determining whether a motion to compel arbitration under the FAA should be granted involves a two-step inquiry. First, the court must determine if the parties agreed to arbitrate. Second, the court determines if the dispute falls within the scope of the arbitration provision. 9 U.S.C. §§ 2, 4; *see, e.g., Bazzle*, 539 U.S. at 451-53; *Mitsubishi Motors Corp.*, 473 U.S. at 626-28. In applying the first step, courts are to consider the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone*, 460 U.S. at 24. If the Court determines that the answer to both questions is "yes," then the FAA requires the Court to enforce the arbitration agreement and compel arbitration. The FAA "leaves no place for the exercise of discretion by a [trial] court, but

instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Additionally, under the federal policy favoring arbitration, it is the role of the courts to "rigorously enforce agreements to arbitrate," *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004), and to "construe any doubt in favor of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

The Loan Agreement unquestionably contains a written agreement between Plaintiff and OneMain Financial to arbitrate claims arising out of and relating to the Loan Agreement, to which Plaintiff expressed a clear intention to be bound by signing the check for the Loan proceeds. (*See* Orlando Dec., Ex. 1 thereto.) Thus, the first prerequisite to enforcement of the Arbitration Agreement is satisfied.

The next question is whether Plaintiff's claims fall within the scope of the Arbitration Agreement. In making this determination, it should be noted that any questions or doubts about the arbitrability of a particular dispute or issue must "be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. And where the agreement to arbitrate is broad, as is the case here with the Arbitration Agreement, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)). As set forth below, however, the most important factor in the assessment of the arbitrability of Plaintiff's claims is that the issue is one for the arbitrator to decide.

1. **Any Threshold Dispute Concerning Arbitrability, or the Validity and Enforceability of the Arbitration Agreement, Must be Decided by the Arbitrator.**

Where an arbitration agreement contains a delegation provision that vests in an arbitrator the authority to determine the validity and enforceability of the arbitration agreement, those threshold issues must be compelled to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-71 (2010). When parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

In *Rent-A-Center*, the United States Supreme Court acknowledged the right of parties to include delegation clauses in arbitration agreements, whereby they "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69 (citing *Howsam*, 537 U.S. at 83-85). To be enforceable, such delegation clauses are subject to a heightened standard, *i.e.*, the parties' intent to arbitrate the issue of arbitrability must be demonstrated by "clear and unmistakable evidence." *Id.* at 79; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted). Unless a party specifically and discretely challenges a clear and unmistakable delegation of authority to the arbitrator, any challenge to the validity or enforceability of the entire arbitration agreement is subject to arbitration and must be left for the arbitrator to resolve. *Rent-A-Center*, 561 U.S. at 70-71.

It is ***clear*** and ***unmistakable*** that the Arbitration Agreement delegates the gateway determinations of arbitrability of Plaintiff's claims, as well as questions of the validity and enforceability of the Arbitration Agreement, to the arbitrator. The Arbitration Agreement ***clearly*** and ***unmistakably*** indicates that covered disputes include "without limitation the arbitrability of any claim or dispute and the validity and enforceability of these Mandatory Arbitration

Provisions." (*See* Orlando Dec., Ex. 1 thereto)  This is a typical broad delegation provision concerning the threshold issue of arbitrability, and according to the overwhelming authority, the Court must compel arbitration of Plaintiff's claims without addressing the merits of the Plaintiff's potential challenges to arbitrability or the validity or enforceability of the Arbitration Agreement.[4]

The delegation of these threshold determinations to the arbitrator could not be any clearer and any less mistakable.  Barring any discrete challenge to the delegation provision itself, the Court must not consider the merits of any challenges Plaintiff may purport to raise concerning the validity or enforceability of the Arbitration Agreement or whether his claims are suitable for arbitration.  *See Rent-A-Center*, 561 U.S. at 70-71.  Nor can the Court consider the merits of any challenge Plaintiff may assert to the validity or enforceability of the overarching Loan Agreement in which the Arbitration Agreement is incorporated.  *See id.*  Because there can be no serious dispute as to the clear and unmistakable delegation of the threshold issues to the arbitrator, the Court's work is finished and it must compel arbitration.  *See id.* at 72; *Byrd*, 470 U.S. at 218.

> **2.    Assuming *Arguendo* That There Were No Delegation Provisions, the FAA Would Nevertheless Require That Plaintiff's Claims be Compelled to Arbitration.**

Even had the parties not delegated gateway determinations to the arbitrator, the FAA

---

[4] Additionally, the Arbitration Agreement provides that the proceedings are to be conducted pursuant to the consumer rules of the American Arbitration Association (the "AAA") which require the arbitrator to decide the issue of arbitrability of claims. *See* R-14 Jurisdiction, Consumer Arbitration Rules, AAA.  Agreements such as this one authorize the arbitrator to decide issues of arbitrability based on the governing arbitration rules and have routinely been upheld by state and federal courts, particularly within the Eleventh Circuit Court of Appeals, under the doctrine announced in *First Options, Inc. v. Kaplan*, 514 U.S. 938 (1995). *See, e.g.*, *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (holding that, by incorporating rules of AAA into arbitration agreement, parties delegated issue of arbitrability to arbitrator); *see also U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, (11th Cir. 2014) (finding district court erred in refusing to allow arbitrator to determine arbitrability where agreement incorporated AAA rules); *CitiFinancial Corp., LLC v. Peoples,* 973 So. 2d 332, 339 (Ala. 2007)(relying on *Terminix* in holding that incorporation of Commercial Arbitration Rules "clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision").

nonetheless would require that arbitration be compelled here as Plaintiff's claims clearly fall within the scope of claims covered by the Arbitration Agreement. As the Eleventh Circuit has explained, "[u]nder the FAA, upon motion of a party, district courts **must** compel arbitration of **all claims subject to arbitration**." *Am. Express Fin. Advisors, Inc. v. Makarewicz,* 122 F.3d 936, 940 (11th Cir. 1997) (emphasis added). In this case, it was agreed that "any claim or dispute between the parties or any claim, dispute, or controversy involving me and any other party arising from or relating to this Agreement or the relationships which result from this agreement" would be arbitrated. (*See* Orlando Dec., Ex. 1 thereto.) There can be no serious question as to whether Plaintiff's claims against OneMain Financial meet that threshold.

Accordingly, Plaintiff's claims must be arbitrated in accordance with the Arbitration Agreement. This is particularly true given the broad construction courts are required to give contractual arbitration provisions and the command to resolve any doubts in favor of arbitration. Therefore, if Plaintiff desires to pursue his claims against OneMain Financial, he should be compelled to initiate arbitration in accordance with the Arbitration Agreement and applicable law.

    **C.**    **Plaintiff's Claims Should be Stayed.**

Once it is determined that the claims asserted in a pending court action are subject to an arbitration agreement, the FAA mandates that the action on the claims be stayed pending arbitration of the claims. *See* 9 U.S.C. § 3. Section 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  As the United States Supreme Court has made clear, "state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the [FAA]." *Moses H. Cone*, 460 U.S. at 26.  Because all of the claims at issue in this litigation are subject to arbitration, this litigation should be stayed while the claims are arbitrated.  *See, e.g.*, *Jefferson v. Baptist Health Sys., Inc.*, No. 2:14-CV-01028-SGC, 2014 WL 6455144, at *1 (N.D. Ala. Nov. 13, 2014) (Proctor, J.) (ordering that action be stayed pending result of arbitration); *Johnson v. Carter*, No. 2:11-CV-493-WKW, 2012 WL 652225, at *1 (M.D. Ala. Feb. 29, 2012) (same); *Ex Parte Main Street South, Ltd.,* 577 So. 2d 1289 (Ala. 1991) (same).  Accordingly, OneMain Financial respectfully requests that, in connection with compelling the claims against OneMain Financial to arbitration, the Court stay all proceedings related thereto, including all discovery, pending their resolution in arbitration.

### IV. CONCLUSION

Plaintiff should be compelled to arbitrate all of his claims against OneMain Financial and this case should be stayed pending arbitration.  There is a valid written arbitration provision that covers the claims asserted against OneMain Financial; the parties agreed that the FAA governs the Arbitration Agreement and the Loan Agreement clearly involved interstate commerce; and the Arbitration Agreement is unquestionably broad enough in scope to encompass the claims in this action.

**WHEREFORE**, premises considered, OneMain Financial respectfully requests that this Court grant its Motion to Compel Arbitration and Stay Litigation.

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

Counsel for OneMain Financial has conferred with Plaintiff regarding compelling Plaintiff's claims to arbitration and counsel for Plaintiff does not agree to the relief sought in this motion.

**RESPECTFULLY SUBMITTED** this submitted this 6th day of December, 2016,

*/s/ Laura Westerman Tanner*
**David Elliott, Esq.**
FL Bar #0094237
Email: delliott@burr.com
Secondary: cwingate@burr.com
**Laura Westerman Tanner, Esq.**
FL Bar #85573
Email: ltanner@burr.com
Secondary email: zhasbini@burr.com
Burr & Forman LLP
201 North Franklin Street, Suite 3200
Tampa, Florida 33602
Tel: (813) 221-2626
Fax: (813) 357-3534

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2016, I filed the foregoing via CM/ECF which will send notice by Electronic Mail to:

William Peerce Howard, Esq.
The Consumer Protection Firm
210 A South MacDill Avenue
Tampa, Florida 33609
Email:
Billy@TheConsumerProtectionFirm.com

*/s/ Laura Westerman Tanner*
Attorney